STEPHEN B. McISAAC vs. NORTHAMPTON ELECTRIC
LIGHTING COMPANY.

Hampden.    September 27, 1898. — October 20, 1898.

Present: FIELD, C. J., HOLMES, KNOWLTON, BARKER, & HAMMOND, JJ.

*Personal Injuries — Master and Servant — Assumption of Risk — Action
— Evidence.*

An electric lighting corporation owes no duty to the linemen in its employ to inspect, below the surface of the ground, the poles upon which its wires are suspended to see whether they are decayed, but a lineman, when he enters its service, assumes the risk of an old pole breaking and falling when he is working upon it, if he does not take measures to ascertain its condition before going upon it, and he cannot maintain an action against the corporation for personal injuries sustained from that cause; and evidence that the corporation had made no inspection of the pole prior to the accident is immaterial.

In an action against an electric lighting corporation for personal injuries occasioned to the plaintiff, while in its employ as a lineman, by the breaking and falling of a pole on which its wires were suspended, the words, "It is not the lineman's business to do it," are rightly stricken from the answer to the question, "That is so simple a man can do it [inspect a pole] who is about to climb a pole as well as anybody?" and the questions, whether it is a "part of the work of a lineman to make that inspection," and whether linemen "customarily perform that work of inspection," are also rightly excluded.

TORT, for personal injuries sustained by the plaintiff while in the defendant's employ as a lineman.    Trial in the Superior Court, before *Maynard*, J., who, at the defendant's request, ruled that the action could not be maintained, and directed the jury to return a verdict for the defendant; and the plaintiff alleged exceptions.    The facts appear in the opinion.

The declaration contained four counts, the first at common law and the last three under the employers' liability act, St. 1887, c. 270.

*J. B. Carroll,* (*W. H. McClintock* with him,) for the plaintiff.
*W. G. Bassett,* for the defendant.

KNOWLTON, J.    The plaintiff was employed by the defendant as a lineman, and was injured by the breaking and falling of a pole on which the defendant's wires were suspended.    The pole was about forty feet in length, was set in the ground about five

feet, and was about thirty-five feet high. The undisputed evidence tended to show that it was badly decayed a few inches below the surface of the ground, so that it broke off square with the strain upon it resulting from the plaintiff's weight and the force from wires drawing upon it after other wires had been removed, which probably had previously tended to counteract the strain from those that remained.    The plaintiff contends that the defendant was guilty of negligence in failing to ascertain whether the pole was sound and strong, or to take other precautions for his safety.

The plaintiff was directed to go and take down from the pole the two wires upon it which belonged to the defendant, and to put them on a new pole near by, which had been erected on account of a change of grade in a railroad at a crossing.   He went alone to do the work, using a horse and wagon belonging to the defendant to carry such tools and materials as he thought he needed.   He was a man of experience in this kind of business, and the method of doing the work he seems to have determined for himself.   The pole was of chestnut wood, about eight inches in diameter at the top, and about fourteen inches at the surface of the ground.   It had been set between eight and nine years, and the evidence tended to prove that it showed no weakness or sign of decay above the ground.

A fundamental question is whether the defendant owed to a lineman, whose business it was to work upon poles all along the line as occasion might require, the duty to inspect its poles below the ground, and inform the linemen whenever any of them were so decayed as to be unsafe to work upon.

. The plaintiff admitted in his testimony that he knew that the life of a pole was limited, and that any pole after a time would become unsafe.   He had worked upon poles in the construction and repair of electric lines many years.   When he engaged to work for the defendant he knew it would be his duty to go upon poles that had been set in the ground an uncertain length of time. He must have known that the work of climbing poles and taking down and putting up wires would often put a strain upon a pole much greater than it would be exposed to in sustaining wires when they were all in their proper positions.   He must have known that it would be inexpedient and impracticable to have a man or company of men to go and examine each pole upon which

a lineman was about to work, to see whether it would sustain the strain which the work would put upon it.   The evidence was undisputed that it was easy to determine very quickly whether a pole was badly decayed a little below the surface of the ground, and that no skill or experience was required to do it beyond that which was possessed by ordinary linemen.   The plaintiff testified that there were risks about the business with which he was familiar as a lineman.   We think that one of the most common and obvious of these, in reference to which both he and his employer must have been presumed to have contracted when he entered the defendant's service, was the risk that some pole of uncertain age might break and fall when a lineman was working upon it, if he did not take measures to ascertain its condition before going upon it.   All the evidence tends to show that in the ordinary course of the business, the linemen, who are often expected to work alone without supervision, as the plaintiff was working at the time of the accident, would examine the poles for themselves so far as they considered it necessary to do so for their safety.   They easily could make any necessary tests to ascertain the condition of the poles as to soundness without the aid of special inspectors, and from their knowledge of common affairs could judge whether the pole was safe to go upon.   The plaintiff testified that there were pike poles belonging to the defendant at the shed from which he started with the horse and wagon, and that he was familiar with the use of pike poles in setting new poles and bracing up old ones, and there is nothing to show that he might not have taken some of them to use in the work if he had chosen to.

The burden was upon him to show that the defendant's neglect of some duty caused the accident.   We are of opinion that there is no evidence that the risk of falling on account of the weakness of old poles was not a risk of the business which the plaintiff assumed by his contract to work upon such poles.   As between the plaintiff and the defendant, the defendant was under no obligation to inspect the poles to see whether they were decayed, and there was therefore no evidence of negligence on the part of the defendant.

There was no error in the rulings in regard to the admission of testimony.   Evidence that the defendant had made no inspection

of its pole prior to the accident was immaterial, inasmuch as the defendant owed the plaintiff no duty to inspect it.

The words, " It is not the lineman's business to do it," in Dorsey's answer, were rightly stricken out. To say nothing of other objections, they were not responsive to the question.* The question whether it was a "part of the work of a lineman to make that inspection," was properly ruled out. It called for an opinion of the witness in regard to the legal effect of a contract. The question whether linemen " customarily perform that work of inspection " was also immaterial. So far as appeared, it was not the custom of anybody to make such an inspection; but in any case where the apparent age of the pole was such as to make it probable that it was not strong enough to sustain a man working upon it, due care on the part of the lineman would require him to examine it just below the surface of the ground before risking himself upon it.

Our view of the main question makes it unnecessary to consider whether the general duty of the defendant to the plaintiff in regard to the strength of poles on which he was working is affected by the fact that it was not the owner of the pole that broke, but was merely using it in its business under the authority of the owner.    *Exceptions overruled.*

---

* This question was as follows : " That is so simple a man can do it [inspect a pole] who is about to climb a pole as well as anybody? "