[Civ. No. 4949. First Appellate District, Division Two.—November 12, 1924.]

## AMY WOOD WILSON, Appellant, v. FREDERICK J. WOOD et al., Respondents.

[1] ADOPTION — CONTRACTS — INHERITANCE.—Where adopting parents contracted to treat an adopted child as their own child and as an heir, they were under no legal obligation to devise any portion of their property to such adopted child, as parents are under no legal obligation to devise any portion of their property to their natural children.

[2] ID.—RECOVERY OF ESTATE OF ADOPTING PARENT — ACTION BY ADOPTED CHILD—CONTRACT—FINDING—EVIDENCE.—In this action by an adopted child to recover a portion of the estate of one of her adopting parents, the trial court was justified in finding that it was not true that the father of plaintiff surrendered her to the adopting parents and consented to her adoption by them upon any other understanding or agreement than that appearing in the written contract of adoption. (Opinion of supreme court, on denial of hearing.)

(1) 1 C. J., p. 1399, sec. 128.    (2) 1 C. J., p. 1394, sec. 116.

APPEAL from a judgment of the Superior Court of Marin County. Edward I. Butler, Judge. Affirmed.

The facts are stated in the opinion of the court.

Joseph Scott, A. G. Ritter and Martinelli & Martinelli for Appellant.

H. W. B. Taylor, Thomas P. Boyd and Robert L. Mc-Williams for Respondents.

NOURSE, J.—This is an action in equity to recover a portion of the estate of Marian S. Wood, deceased, on the theory that the deceased and her husband contracted with plaintiff

1. Right of adopted child to inherit, note, 118 Am. St. Rep. 684. See, also, 1 R. C. L. 619; 1 Cal. Jur. 449.

Rights of adopted children under wills, notes, 17 L. R. A. 437; 27 L. R. A. (N. S.) 1158; L. R. A. 1916B, 123.

Right to disinherit adopted child, note, L. R. A. 1916D, 424.

and her father to give to plaintiff a one-third vested interest in the property of the estate.

The facts of the case are that in 1874, in the state of Michigan, the deceased and her husband agreed with the father of the plaintiff, who was then a girl of three years of age, that they would adopt the plaintiff as their own child under the statutes then in force in that state. A written agreement of adoption was executed by the parties in which it was recited that the deceased and her husband intended to make said child their heir and that they would adopt her as their own child and heir. This agreement was approved by the probate court, and on the first day of February, 1875, the order of the court was entered citing the terms of the agreement and decreeing that the name of the plaintiff was thereby changed to Amy Wood and that she was thereafter entitled to all the rights of heir at law of the adopting parents. She was thereupon taken into the home of the Woods and lived with them as their daughter continuously until her marriage in 1891. She was always referred to by the Woods as their daughter and she was taught to address them as father and mother. This relation continued until the death of the Woods. The marriage in 1891 was without the consent of her adopting parents and caused them to become estranged, though correspondence was continued and Mr. Wood frequently contributed to the plaintiff's support. The marriage was not successful, and a divorce was obtained by this plaintiff. During this time Mr. Wood particularly was very solicitous of the plaintiff, advised her in the matter of procuring her divorce, contributed to her support, and purchased for her a house in which she made her home. Mr. Wood died in 1917 leaving a last will and testament in which he bequeathed to the plaintiff the sum of twenty-five thousand dollars in trust to be held for her until her son reached the age of twenty-one years, and also bequeathed to her son the sum of five thousand dollars. Mrs. Wood died in 1922 leaving a last will and testament in which she bequeathed to the plaintiff the sum of one thousand dollars. It is admitted by the parties hereto that her estate was valued at more than one million five hundred thousand dollars. The bulk of this estate was left to the two sons who were the natural children of Mr. and Mrs.

Wood. It is the theory of plaintiff in this action that by reason of the pre-adoption agreement she is entitled to succeed to one-third of the estate left by Mrs. Wood.

The trial court upon authority of the decisions of the supreme court of the state of Michigan found that the adoption proceedings were void. It also found that notwithstanding the invalidity of the adoption proceedings the Woods took the plaintiff into their home and under their possession, control, and custody, and gave her their name and thereafter treated her as their own daughter; that the plaintiff at all times treated the Woods as her parents, and rendered to them the proper obedience and services due from a daughter to her own parents. It was also found that it was not true that the plaintiff's father and the Woods entered into an agreement prior to the adoption proceedings whereby the Woods undertook to give to plaintiff the right to inherit or succeed to their property after their death or that they agreed with the father of plaintiff at that time that they would at their death leave to plaintiff a share in their property equal to a share to which their natural born children would succeed under the laws of succession or inheritance, and it was further found that it was not true that the father of plaintiff surrendered her to the Woods and consented to her adoption by them upon any other understanding or agreement than that appearing in the written contract of adoption which is set forth in the record. Upon these findings the trial court rendered judgment in favor of the defendants, and from this judgment the plaintiff appeals on a bill of exceptions.

The written contract upon which the order of adoption was based provided that the appellant should be taken into the home of the Woods as their own child and heir and recited that the purpose of the proceedings was to have the natural father relinquish the custody of his child to the Woods so that they might adopt her and make her a member of their family, and also recited that they intended to make her their heir. The father of appellant testified that about the time this written agreement was executed his attorney called his attention to the fact that it did not make clear that his daughter would enjoy the right of inheritance on the same basis as the other children, and that for that

reason he requested that the Woods would change or modify the agreement so that this point would be made clear. He testified that this was agreed to and that a new contract of adoption was prepared and executed prior to the entry of the order of the probate court effecting the adoption. This second contract is not in evidence, however, and a search of the records of the probate court discloses that it is not on file. The testimony of appellant's father as to the conversations leading up to the adoption is clear and explicit, and it is wholly uncontradicted either by other testimony or by the records in the proceedings. The appellant was, therefore, entitled to a much more favorable finding than that which the trial court made. The uncontradicted evidence is that before the adoption order was entered the Woods agreed with appellant's father that they would take the appellant into their home, give her a good education, and that she would have the same love and care that they would have for their own children and share equally in any of the property that they might have. "That was agreed to before I went and got the child. That was the way the adoption papers was to read." The father also testified that when he exhibited the contract to his attorney he was advised that it should be changed so as to read that the appellant "should share equal with the rest of them in their property." He testified that the attorney said that he would be very glad to take the little girl and that he would draw a contract to that effect "that she should be an heir equal to any child that he would have." The witness then testified that he reported this conversation to Mr. and Mrs. Wood and that they said that that was what they agreed to.

The case which is presented on this appeal is that the pretended adoption was effected on the basis of an agreement on the part of the adopting parents to do nothing more than to take the appellant into their family as their own child and heir. If the trial court had found in accordance with the undisputed evidence before it we would have had a case in which the adopting parents had agreed to take the appellant into their family as their own child with all the rights and duties of such, including the right of inheritance which a natural child would have had. Assuming, however, that the court had so found, we are satisfied that the con-

tract which the appellant sought to prove was insufficient under the law to justify an awarding of a portion of the estate left by her adopting parents. If these parents had died intestate then the case would be one like *Steinberger* v. *Young,* 175 Cal. 81 [165 Pac. 432], where the supreme court affirmed a judgment awarding specific performance of an alleged agreement between the plaintiff's stepfather and the decedent whereby the decedent agreed to adopt the child as her own daughter and heir, entitled as such to receive on the death of decedent all of her property.

This case, however, does not go as far as the Steinberger case and others of that nature. Assuming that the testimony in this case is sufficient to support the claim that the Woods agreed to take the appellant into their home as one of their children and treat her as an heir equal with their own children, this is far different from a contract which expressly provides that the adopted child shall have all or a certain portion of the estate of the adopting parent without other conditions. [1] If the agreement is merely that the child shall be treated as an heir on the same basis as the natural children of the adopting parents the right to otherwise dispose of the property by will still remains as it does in the case of the natural children. In *Monsen* v. *Monsen,* 174 Cal. 97, 101 [162 Pac. 90], the supreme court in reviewing evidence of this nature said that it could support at the utmost an inference that the Monsens had agreed to take plaintiff and keep him as their child. Then it was said, "inasmuch, however, as a parent is under no legal obligation to give his property by will to a child, no cause of action would arise from such a contract." This is precisely the situation that arises in the case under consideration. Looking at the evidence most favorable to appellant it would appear that the contract was nothing more than one that the adopting parents would take the appellant into their home, treat her as their child, and give to her the rights of a natural child, including the right of inheritance. As parents are under no legal obligation to devise any portion of their property to their natural children, they cannot be said to be under any legal obligation to do so in relation to an adopted child unless the contract specifically and in no uncertain

terms provides that such a distribution of the property should be made.

The judgment is affirmed.

Sturtevant, J., and Langdon, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 8, 1925, and the following opinion then rendered thereon:

THE COURT.—Appellant's petition for a transfer and hearing by this court after decision of the district court of appeal is denied.

[2] We do not agree with the statement in the opinion to the effect that the appellant was entitled to a much more favorable finding than that which the trial court made. It is true that the testimony of appellant's father as to the terms of the contract entered into between him and the Woods was not expressly contradicted by the testimony of any witness. But there were various facts and circumstances in evidence which tended legitimately to controvert this testimony and other facts and circumstances which had a tendency to impeach its credibility. Under these circumstances the trial court was legally justified in finding that it was not true that the father of plaintiff surrendered her to the Woods and consented to her adoption by them upon any other understanding or agreement than that appearing in the written contract of adoption. This finding in turn supported the judgment and it was properly affirmed.