76546. DEPARTMENT OF PUBLIC SAFETY v. BOATRIGHT.
(373 SE2d 770)

CARLEY, Judge.

Prior to his retirement in December of 1986, appellee-employee was employed as a state patrolman by the appellant-employer Department of Public Safety. On December 1, 1984, the employee, while in pursuit of a suspect, was involved in a crash of his patrol car. He stated at the scene of the crash that he was not injured and he sought no immediate medical aid. The employee reported to his next scheduled shift but, a few days later, increasing pain in his knees forced him to miss time from work and to consult his own personal physician. The employee had a long-standing chronic arthritic condition for which he had been receiving treatment on an "as needed" basis. After the crash, however, he began to have pain in his knees with greater frequency and intensity than he had experienced previously.

Approximately nine months after the crash, the employer transferred the employee from his regular patrol duties and gave him another job assignment. The purpose of this job transfer was to protect the employee from injury to his knees and to insure that his employment would be commensurate with his painful physical condition. Meanwhile, the employee continued to see his own personal physician and other private physicians to whom he was referred. The employee did not apply for workers' compensation benefits. The work days that he missed were taken as his regular sick leave. His medical bills were paid by his group insurance and by himself.

In the Fall of 1986, the employer determined that the physical condition of the employee was such that he should take disability retirement effective in December of that year. In November of 1986, the employee filed a workers' compensation claim, asserting that his disability was a compensable "injury." The employer controverted the claim and a hearing was held before an administrative law judge (ALJ). The ALJ found that the employee had become physically disabled in 1986 as a result of rheumatoid arthritis and that he had not

sustained the burden of proving a causal connection between his 1986 disability and the 1984 crash of his patrol car. The ALJ further found that a claim by the employee for workers' compensation based upon the 1984 automobile crash would be barred by the one-year statute of limitations.

The Full Board adopted the award of the ALJ. The employee appealed to the superior court. The superior court reversed, holding that the Full Board had made an "erroneous conclusion of law that the [employee] has not . . . sustained his burden of proof" and further holding that the Full Board had erred as a matter of law in finding that the employee's claim for workers' compensation benefits based upon his involvement in the 1984 crash was barred by the statute of limitations. The employer applied to this court for a discretionary appeal from the superior court's reversal of the Full Board's award. We granted the employer's application and this appeal results.

1. It is undisputed that, in December of 1984, the employee was involved in an *automobile crash* which arose out of and in the course of his employment. This alone, however, will not demand a finding that the employee is entitled to receive workers' compensation benefits. Unless the employee suffered an "injury" as the consequence of his involvement in that crash, he has no workers' compensation claim whatsoever. See generally OCGA § 34-9-1 (4). Moreover, even if the employee had suffered a compensable "injury" in December of 1984, the one-year statute of limitations would bar his claim for workers' compensation benefits based thereon, *unless* his subsequent 1986 disability was shown to be the result of the aggravation of that earlier compensable "injury." See generally *Central State Hosp. v. James*, 147 Ga. App. 308 (1a) (248 SE2d 678) (1978). The award of the Full Board found that there was no proximate causal connection between the employee's December 1984 crash and the subsequent deterioration in his physical condition, which deterioration had ultimately culminated in 1986 in his disability to work. Instead, the Full Board found that the employee had become disabled in 1986 as the result of pre-existing rheumatoid arthritis and that he had not borne the burden of proving that he had sustained any compensable accidental "injury" occurring on the date of his retirement "or at any other time." Having thus found, in effect, that the employee's 1986 disability, as the asserted "injury" at issue, resulted from pre-existing rheumatoid arthritis and was neither a compensable "injury" in and of itself nor a "new injury" attributable to the aggravation of an earlier compensable "injury" suffered in the 1984 crash, the Full Board further found that the one-year statute of limitations would bar a workers' compensation claim based upon the employee's assertion of any other "injury" as "may have occurred as a result" of the December 1984 crash.

If there is *any* evidence to support the findings of the Full Board,

the superior court erred in reversing the award. The superior court was required to construe the evidence in the light most favorable to the employer as the party who prevailed before the Full Board. See generally OCGA § 34-9-105; *Fulmer v. Aetna Cas. &c. Co.*, 85 Ga. App. 102 (68 SE2d 180) (1951). The Full Board's findings of fact, when supported by any evidence, are conclusive and binding. See *Howard Sheppard, Inc. v. McGowan*, 137 Ga. App. 408, 410 (224 SE2d 65) (1976). The superior court is not authorized to substitute its judgment for that of the Full Board. See *Horton v. Ga. Power Co.*, 164 Ga. App. 252 (296 SE2d 798) (1982). The superior court is authorized to reverse an award of the Full Board only when there is plain error of fact or an error purely of law. See *Crawford W. Long Hosp. v. Mitchell*, 100 Ga. App. 276 (111 SE2d 120) (1959). Accordingly, the issue to be resolved is whether the superior court correctly held that there was no evidence to support the Full Board's finding of a lack of causal connection between the 1984 crash of the employee's patrol car and the subsequent deterioration of the condition of his knees which ultimately resulted in his involuntary retirement in December of 1986.

The only *testimony* which was offered was that of the employee and his supervisor. However, the *medical records* of the employee were also in evidence. These medical records clearly show that the employee had suffered from arthritis for several years *prior* to the crash and that he continued to receive treatment for his arthritic condition thereafter. In his deposition, the employee testified as to his chronic arthritic condition. Although at one point in his deposition, the employee stated that he had experienced no problems with his knees as a result of arthritis prior to the collision, he later admitted that he was not sure that that was the case. Furthermore, the medical records show a medical history that indicates that in 1983, the employee "had a flare up of his symptoms which involved significantly his knees." Finally, the medical records of Dr. Bagley, who saw the employee in January of 1985, do not show that the employee mentioned a December 1984 automobile crash.

This evidence would authorize the Full Board, as the finder of fact, to find that the deterioration in the employee's physical condition which resulted in his 1986 disability was attributable to his pre-existing arthritis and not to a compensable "injury" suffered in the 1984 automobile crash. If there was no such causal connection, then the employee's 1986 disability was not a "new accident" and the one-year statute of limitations as to any compensable "injury" that he might otherwise have suffered in the crash had run. "The ALJ and full board 'as factfinders have exclusive prerogative of weighing evidence, including determinations of credibility of witnesses; the courts on appeal are bound by findings if supported by any evidence. . . .

(I)n arriving at the truth, (they) may apply all of the rules of law with reference to the credibility of the witnesses testifying, their intelligence, their means and opportunity of knowing the facts to which they testify, the nature of the facts to which they testify, the probability or improbability of their testimony, their interest or want of interest, and their personal credibility so far as the same legitimately appears from the trial.' [Cit.]" *Handcrafted Furniture v. Black*, 182 Ga. App. 115, 117 (354 SE2d 696) (1987).

It follows that the superior court erred in substituting its findings of fact for those of the Full Board so as to mandate an ultimate award in favor of the employee. Although the superior court's order purported merely to remand the case to the Full Board, it specifically ruled that "there is no evidence to controvert testimony . . . that [the employee] was injured in and out of the course of his employment." While there is no doubt that the evidence would demand a finding that, in 1984, the employee was involved in an automobile crash arising in and during the course of his employment, the relevant issue is whether the 1986 disability was an aggravation of a compensable "injury" which was suffered in the 1984 crash or was attributable to other non-compensable causes. The evidence would authorize a finding that the employee's 1986 disability was attributable to causes other than the 1984 crash. Thus, the superior court's order has the erroneous effect of requiring that the Full Board find in favor of the employee.

2. However, the record does show that the Full Board, in its findings, made the unqualified statement that the employee "did not miss any work after this collision." It is unclear what this finding represents. If it represents the Full Board's determination that the employee did not miss any work *immediately* after the crash, it is an accurate reflection of the evidence. If it represents the Full Board's conclusion that the employee missed no work whatsoever after the crash, it is an erroneous reflection of the evidence. The evidence shows that, several days after the crash, the employee did miss work and that he thereafter continued to consult the doctors he had previously seen for his arthritis and other physicians to whom he was referred. Nevertheless, this one possible misstatement by the Full Board of the evidence will not necessarily authorize a complete reversal of the award. " '(A) misstatement of significant testimony will be ground for referral back to the board of an award (even if) otherwise supported by evidence where it is possible that a proper understanding of the evidence might have caused the finder of fact to reach a different conclusion.' [Cits.] 'The most that the superior court or this court can do is, if it finds a significant misstatement of testimony in the finding of facts which in all likelihood erroneously influenced the award, to remand the case for further consideration. [Cit.]' [Cit.]" *Fi-*

*delity & Cas. Ins. Co. v. CIGNA/Pacific &c. Ins. Co.*, 180 Ga. App. 159, 162 (2) (348 SE2d 702) (1986). Compare *Chevrolet-Pontiac-Canada &c. Corp. v. Millar*, 182 Ga. App. 889 (1) (357 SE2d 598) (1987).

If the finding that the employee "did not miss any work after this collision" represents a misstatement of the evidence, it is possible that it may have erroneously influenced the award. Giving consideration to the fact that the employee *did* miss some work after the 1984 crash, the Full Board, acting as the finder of fact, might find that his 1986 disability *was* attributable to the 1984 injury and not to his pre-existing arthritis. Accordingly, the superior court erred in reversing the award outright and in failing simply to remand the case to the Full Board for further consideration. "[T]he order of the superior court reversing the award is itself reversed, with direction that the case be remanded to the [Full] Board for further proceedings not inconsistent with this opinion." *Fidelity & Cas. Ins. Co. v. CIGNA/Pacific &c. Ins. Co.*, supra at 162 (2).

*Judgment reversed with direction. Birdsong, C. J., McMurray, P. J., Sognier, Pope, Benham and Beasley, JJ., concur. Deen, P. J., and Banke, P. J., dissent.*

DEEN, Presiding Judge, dissenting.

I must respectfully dissent from the majority opinion. I would agree, of course, that ordinarily the superior court, when sitting as an appellate tribunal, must construe the evidence in the light most favorable to the party prevailing below, OCGA § 34-9-105, *Fulmer v. Aetna Cas. &c. Co.*, 85 Ga. App. 102 (68 SE2d 180) (1951); and the Board's findings of fact, when supported by any evidence, are conclusive and binding upon the appellate court. *Howard Sheppard, Inc. v. McGowan*, 137 Ga. App. 408, 410 (224 SE2d 65) (1976). The superior court is not authorized to substitute its judgment for that of the Board, *Horton v. Ga. Power Co.*, 164 Ga. App. 252 (296 SE2d 798) (1982), and is authorized to reverse the Board's award only when there is plain error of fact or an error purely of law. *Crawford W. Long Hosp. v. Mitchell*, 100 Ga. App. 276 (111 SE2d 120) (1959).

In the instant case the superior court's reversal and remand represented errors of both fact and law. Dealing with the factual issue first, we find that the ALJ plainly erred in finding as fact that "claimant did not miss any work after [the] collision [of December 1, 1984]," apparently with no regard to claimant's testimony or to the testimony and official report of his supervisor, who of course had first-hand knowledge not only that the accident had occurred but that Boatright's physical condition had begun to deteriorate as of that time; and in further finding that "claimant has not as a fact sustained his burden of proof that he sustained any accidental injury which rose out of and in the course of his employment on December 5, 1986, or

at any other time." A review of the medical evidence of record reveals nothing that would support the ALJ's findings as against the deposition testimony of either claimant or his supervisor. When competent and clearly admissible evidence is simply not addressed, then there can — and in the instant case, does — exist the likelihood of a "plain error of fact" which arguably is sufficiently prejudicial to warrant reversal of the Board's award.

Moreover, the superior court correctly found that the ALJ had erred as a matter of law in holding that the statute of limitations had run before Boatright filed his workers' compensation claim. Case law in this area has consistently held that when an employee receives a work-related injury but returns to work without receiving workers' compensation benefits, and then suffers such worsening or aggravation of the injury as to render him unable to perform his ordinary work, his inability to work will be denominated a "new injury" or "new accident"; and the date on which the disability to work manifests itself will be considered the date of the "new injury." *Central State Hosp. v. James*, 147 Ga. App. 308, 310 (248 SE2d 678) (1978). A "new injury" may consist of either (1) a gradual worsening of the employee's physical condition, at least partially attributable to his continuing work after the original uncompensated injury; or (2) a specific job-related injury which aggravates a pre-existing uncompensated injury or condition. *Slattery Assoc. v. Hufstetler*, 161 Ga. App. 389 (288 SE2d 654) (1982); see also *Dairymen, Inc. v. Wood*, 162 Ga. App. 430 (291 SE2d 763) (1982). No proof of a specific "new injury" is required; a worsening of a previous uncompensated injury sufficient to produce disability is all that is necessary. *Central State Hosp. v. James*, supra; *House v. Echota Cotton Mills*, 129 Ga. App. 350 (199 SE2d 585) (1973). See also *Zurich Ins. Co. v. Cheshire*, 178 Ga. App. 539 (343 SE2d 753) (1986); *Hartford Accident &c. Ins. Co. v. Mauldin*, 147 Ga. App. 230 (248 SE2d 528) (1978); *Liberty Mut. Ins. Co. v. White*, 139 Ga. App. 85 (227 SE2d 886) (1976); *National Union Fire Ins. Co. v. Johnston*, 122 Ga. App. 332 (177 SE2d 125) (1970); *Mallory v. American Cas. Co.*, 114 Ga. App. 641 (152 SE2d 592) (1966). *Fireman's Fund Ins. Co. v. New*, 110 Ga. App. 596 (139 SE2d 343) (1964).

In the instant case it is uncontroverted that claimant had not filed for workers' compensation benefits. The evidence of record makes it clear that claimant's 1984 injury arose out of and in connection with his job; that his employer received timely actual notice; that his physical condition underwent obvious changes for the worse between the accident and his disability retirement; that he missed a great deal of time from work and incurred a great many bills because of his worsening condition; and that his workers' compensation claim was filed in November 1986. Since by definition the date of his injury

was the date of his disability retirement in December of 1986, the November 1986 filing of the claim was timely.

I respectfully dissent. I am authorized to state that Presiding Judge Banke joins in this dissent.

DECIDED SEPTEMBER 7, 1988 —
REHEARING DENIED SEPTEMBER 30, 1988

*Charles W. Barrow, A. Martin Kent, Michael J. Bowers, Attorney General,* for appellant.

*Rudolph J. Chambless, Vernon L. Chambless,* for appellee.